UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
XL SPECIALTY INSURANCE
COMPANY et ano,

     Plaintiffs,

          v.

FRACHT FWO INC.,

     Defendant/Third-Party
     Plaintiff,

          v.

CMA CGM SA et al.

     Third-Party Defendants.
```

24-cv-1987 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court are motions made by the third-party defendants to dismiss and for judgment on the pleadings. On March 5, 2025, the Court issued a bottom-line order granting both motions. See ECF No. 40. This memorandum order sets forth the reasons for those rulings.

I.   Background

This case concerns three shipments of spoiled string cheese. Plaintiff Leprino Foods Dairy Products Company ("Leprino") is a manufacturer and supplier of dairy products that sought to ship its string cheese from Chicago, Illinois to Busan, South Korea in October and November of 2022. Plaintiff XL Specialty Insurance Company ("XL") is the insurance company that insured those shipments.

In November 2023, Leprino and XL (collectively "plaintiffs") filed suit against defendant Fracht FWO, Inc. ("Fracht"), a non-vessel

1

common carrier ("NVOCC")[1] and freight forwarder that agreed to facilitate the cheese shipments on Leprino's behalf. Plaintiffs filed their complaint in New York Supreme Court pursuant to a forum selection clause in Fracht's bills of lading.[2] See ECF No. 37, Exhibit 3, at ¶ 20; ECF No. 37, Exhibit 4, at ¶ 20. In their complaint, plaintiffs alleged that Fracht failed to maintain an appropriate temperature for the cheese and caused it to spoil, and sought $287,231 in damages plus interest. Fracht later removed to this Court on the basis of this Court's admiralty and maritime jurisdiction.

In June 2024, Fracht filed a third-party complaint, impleading five third-party defendants: (1) CMA CGM SA ("CMA"), the vessel-operating common carrier ("VOCC")[3] that Fracht, acting as Leprino's agent, hired to ship the cheese pursuant to two additional bills of lading; (2) Evergreen Marine Singapore, the owner and manager of one

---

[1] As the Second Circuit has explained, a NVOCC is "one who holds himself or herself out to provide transportation for hire by water in interstate commerce, or in commerce from the United States who assumes or has liability for safe transport and who does not operate the vessel on which the goods are transported." Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 140 n.2 (2d Cir. 2010). "[A] NVOCC will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo." Id. "Instead the NVOCC delivers the shipment to an ocean carrier for transportation." Id.

[2] A bill of lading is both "an acknowledgment by a carrier that it has received goods for shipment" and a "contract of carriage." Id. at 141 n.3; see also Norfolk S. Ry Co. v. Kirby, 543 U.S. 14, 18 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.").

[3] As the name suggests, VCOCCs own and operate vessels. NVOCCs enter service contracts with VOCCs, which physically ship goods on their behalf. See Royal & Sun Alliance Ins., PLC, 612 F.3d at 140-141.

of the vessels that shipped the cheese, called the "M/V EVER LAUREL"; (3) Yasama New Pulsar V3 SA, the owner of the other vessel that shipped the cheese, called the "M/V/ EVER LASTING"; (4) Evergreen Marine UK Ltd., the manager of the M/V EVER LASTING; and (5) Evergreen Marine Corporation, the "technical" manager of both ships. See ECF No. 8 ("Third-Party Complaint"), at ¶¶ 6-10. The second, third, fourth, and fifth third-party defendants are collectively referred to as the "Evergreen defendants."

In its third-party complaint, Fracht raised claims for breach of contract and breaches of various statutory and common law duties under CMA's bills of lading. The third-party complaint also tendered the third-party defendants to plaintiffs pursuant to Federal Rule of Civil Procedure 14(c), which provides that an admiralty or maritime plaintiff may, as a third-party plaintiff, "bring in a third-party defendant who may be wholly or partly liable -- either to the plaintiff or to the third-party plaintiff -- for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences."[4] Fed. R. Civ. P. 14(c)(1). Under those circumstances, "the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim" and "the action proceeds as if the plaintiff had sued both the

---

[4] Unless otherwise indicated, all quotations omit internal alterations, brackets, citations, ellipses, emphases, quotations, and quotation marks.

third-party defendant and the third-party plaintiff." Fed. R. Civ. P. 14(c)(2).

The third-party defendants now seek to dismiss both Fracht's third-party complaint and plaintiffs' complaint as it applies to them vis-à-vis the Rule 14(c) tender. To that end, CMA filed a motion to dismiss, see ECF No. 29, and the Evergreen defendants cross-moved for judgment on the pleadings, see ECF No. 32. Although CMA and the Evergreen defendants submitted separate briefing to the Court, the Evergreen defendants have incorporated CMA's arguments by reference. See ECF No. 34, at 8 ("Cross-Movants refer to, and incorporate herein, CMA CGM's arguments in connection with CMA CGM's Motion.").

II.  Legal Standard

The standard for granting a motion to dismiss is "identical" to the standard for granting a motion for judgment on the pleadings. Lively v. WAFRA Inv. Advisory Grp., 6 F.4th 293, 301 (2d Cir. 2021). To survive a motion to dismiss or a motion for judgment on the pleadings, "the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Id. In determining whether a plaintiff has stated a plausible claim to relief, courts "draw all reasonable inferences in the plaintiff's favor." Id.

4

III. Discussion

Because the Evergreen defendants incorporate CMA's arguments by reference, the Court begins by considering CMA's motion to dismiss and then proceeds to consider the Evergreen defendants' cross-motion for judgment on the pleadings.

### A. CMA

CMA asks the Court to dismiss both Fracht's third-party complaint and plaintiffs' complaint as it applies to CMA via the Rule 14(c) tender. To that end, CMA invokes two identical forum selection clauses, which are repeated on every page of CMA's bills of lading. Those clauses state:

> All claims and actions arising between the Carrier and the Merchant in relation with the contract of Carriage evidenced by this Waybill shall exclusively be brought before the Tribunal de Commerce de Marseille and no other Court shall have jurisdiction with regards to any such claim or action.

ECF No. 31, Exhibit B, at 2; see also ECF No. 31, Exhibit C, at 2 (same). Under the "Terms and Conditions" to CMA's bills of lading,[5] "Carrier" is defined as "the Party on whose behalf the Bill of Lading is issued," while "Merchant" is defined as "the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such Person." ECF No. 31, Exhibit D, at 1. "Carrier"

---

[5] CMA's bills of lading explicitly provide that they are "governed by the Terms and Conditions available on the CMA CGM website . . . which the Merchant has read and accepted." ECF No. 31, Exhibit B, at 3; see also ECF No. 31, Exhibit C, at 3 (same).

5

therefore refers to CMA, while "Merchant" refers to Fracht. The text of the forum selection clauses thus makes clear that CMA and Fracht have agreed to litigate any and all matters arising under CMA's bills of lading exclusively in the Tribunal de Commerce de Marseille.[6]

Applying controlling Supreme Court and Second Circuit precedent, the Court concludes that the parties' forum selection clause is enforceable in this case. The Supreme Court has emphasized that "a valid forum selection clause should be given controlling weight in all but the most exceptional of cases." Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 63 (2013); see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (explaining that forum-selection clauses are "prima facie valid and should be enforced" in the admiralty context "unless enforcement is shown by the resisting party to be unreasonable under the circumstances"). To identify such "exceptional cases," the Second Circuit has articulated a four-part test. First, courts must determine whether the forum selection clause was "reasonably communicated to the party resisting enforcement." Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). Second, courts must "classify the clause as mandatory or permissive." Id. Third, courts must assess whether "the

---

[6] The "Terms and Conditions" of CMA's bills of lading similarly state that the Tribunal de Commerce de Marseille is the exclusive forum for any disputes arising under the bills of lading. See ECF No. 31, Exhibit D, at ¶ 31 ("All claims and actions arising between the Carrier and the Merchant in relation with the contract of Carriage evidenced by this Bill of Lading shall be brought before the Tribunal de Commerce de Marseille and no other Court shall have jurisdiction with regards to any such claim or action." (emphasis in original)).

claims and parties involved in the suit are subject to the forum selection clause." Id. If the first three factors are satisfied, then the forum selection clause is "presumptively enforceable." Id. "The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 383-84.

In this case, the forum selection clause is presumptively enforceable as to Fracht's third-party complaint. As for the first Phillips factor, the forum selection clause appears on every page of CMA's bills of lading, so it was reasonably communicated to both Fracht and CMA. See, e.g., ECF No. 31, Exhibit B, at 1, 2, 3. As for the second factor, the clause uses the term "shall," which classifies as mandatory, rather than permissive. Id. And as for the third factor, the clause applies to "[a]ll claims and actions" arising between CMA and Fracht under CMA's bills of lading. Id.

Because the forum selection clause is therefore presumptively enforceable, the Court must proceed to consider whether Fracht has "rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips, 494 F.3d at 383-34. Fracht has neither identified a reason why enforcement of the forum selection clause would be "unreasonable or unjust" nor explained why the clause is "invalid." Id. Accordingly,

7

the Court concludes that the forum selection clause is enforceable as to Fracht's third-party complaint in this case.

Fracht nevertheless insists that the forum selection clause is not enforceable as to either Fracht's third-party complaint or plaintiffs' complaint because plaintiff Leprino is not a party to CMA's bills of lading. Focusing on the third Phillips factor, Fracht concedes that its "claims" are governed by the clause, but argues that not all the "parties" are, so that the clause is not presumptively enforceable. The Court rejects this argument for three reasons.

First, it is well-established that an exporter, NVOCC, and VOCC may all be bound by the terms of a single bill of lading that the NVOCC has agreed to as an agent of the exporter. Indeed, district courts routinely hold that exporters (like Leprino) are bound by forum selection clauses found in bills of lading that NVOCCs (like Fracht) negotiate with VOCCs (like CMA) on their behalf. See, e.g., Laufer Grp. Int'l v. Tamarack Indust., LLC, 599 F. Supp. 2d 528, 531 (S.D.N.Y. 2009) ("[T]he owner of cargo can be bound by a forum selection clause in a bill of lading accepted by an . . . intermediary if that party was acting on behalf of the owner, or was acting as the owner's agent, even if the cargo owner was not a party to the bill of lading."). Here, the third-party complaint alleges that Fracht acted as Leprino's agent in contracting with CMA. See Third-Party Complaint at ¶ 11 ("[Fracht] was and is engaged as a logistics and transportation intermediary, in the business of a NVOCC and a freight forwarder, and, in such capacity, arranges the shipment of goods on behalf of third

8

party customer cargo interests, including . . . [the] shipments that are identified in and the subject of Plaintiffs' Complaint."). Under this Court's precedents, Leprino is therefore bound by the forum selection clause in CMA's bills of lading as to any claims against CMA.

Second, the plain text of CMA's bills of lading makes clear that Leprino is bound by them. As noted above, CMA's bills of lading define "Merchant" as "the Shipper, Holder, Consignee, Receiver of the Goods, any Person Owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such Person." ECF No. 31, Exhibit D, at 1 (emphasis added). At a minimum, Leprino qualifies as "any Person Owning or entitled to the possession of the Goods." Id.; see also Third Party Complaint at ¶ 4 ("At all times relevant hereto, Plaintiff Leprino Foods Dairy Products Company . . . was and is an alleged shipper, owner and/or party with a cognizable insurance interest in the cargo." (emphasis added)). Accordingly, Leprino is explicitly bound by the forum selection clause in CMA's bills of lading as to any claims against CMA.

Third, even if Leprino was not bound by CMA's bills of lading, the dismissal of Fracht's third-party complaint effectively moots the Rule 14(c) tender. As discussed above, applying the four Phillips factors, the forum selection clause in CMA's bill of lading is enforceable. The Court must therefore dismiss Fracht's third-party complaint. Having thus dismissed the third-party complaint, "there is no longer a basis for the invocation of [Rule] 14(c)(2)," Bax Global,

9

Inc. v. Ocean World Lines, Inc., No. 07-cv-10457, 2009 WL 3001816, at *2 (S.D.N.Y. Sept. 18, 2009), so the Court must also grant CMA's motion to dismiss with respect to Leprino's complaint.[7]

For all these reasons, the Court grants CMA's motion to dismiss with respect to both Fracht's third-party complaint and plaintiffs' complaint as it applies to CMA via the Rule 14(c) tender.

B. The Evergreen Defendants

The Evergreen defendants have similarly moved to dismiss both Fracht's third-party complaint and plaintiffs' complaint as it applies to them via the Rule 14(c) tender. To that end, they point to two separate clauses of the "Terms and Conditions" of CMA's bills of lading. Together, those clauses make clear that Fracht has already agreed that the Evergreen defendants may not be subject to liability in this case.

The first clause, a so-called "Himalaya Clause"[8] that appears in a paragraph labeled "Sub-contracting and Indemnity," states:

> [E]very such Person [to wit: any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub-

---

[7] Moreover, despite Fracht's Rule 14(c) tender, Leprino did not oppose CMA's motion to dismiss -- or, for that matter, the Evergreen defendants' cross-motion for judgment on the pleadings. Fracht cannot raise arguments on Leprino's behalf to survive the third-party defendants' motions to dismiss Fracht's own claims, and the dismissal of those claims eliminates the basis for the Rule 14(c) tender.

[8] A "Himalya Clause" serves to "extend[] contractual protections that would otherwise apply only to the entity issuing the bill of lading to the subcontractors of the issuing entity as well." Royal & Sun Alliance Ins., 612 F.3d at 142; see also Norfolk S. Ry Co., 543 U.S. at 20 at n.2 ("Clauses extending liability limitations take their name from an English case involving a steamship called Himalaya." (emphasis in original)).

10

>  Contractors of the Carrier)] shall have the benefit of every right, defence, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier as if such provisions were expressly for its benefit; and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on its own behalf but also as agent and trustee for such Persons.

ECF No. 31, Exhibit D, at ¶ 27(2). Because the Evergreen defendants were subcontractors of CMA and "performed" the "Carriage" giving rise to this suit, they qualify as "Person[s]" who are entitled to the "benefit of every right, defence, limitation and liberty" outlined in the bills of lading, including the forum selection clause. Id. at ¶ 27(2). As discussed above, that clause is enforceable in this case as to both Fracht and Leprino, and the enforcement of the clause effectively moots the Rule 14(c) tender. Accordingly, the Court can dismiss all the claims against the Evergreen defendants based on the Himalaya Clause alone.

The second clause, which also appears in the "Sub-contracting and Indemnity" paragraph, provides an additional and independent basis for dismissal. It states:

> The Merchant further undertakes that <u>no claim or allegation shall be made against any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub-Contractors of the Carrier), other than the Carrier</u>, which imposes or attempt to impose upon any such Person, or any Vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of such person . . . .

Id. at ¶ 27(2) (emphasis added). Simply put, Fracht agreed that CMA's subcontractors, including the Evergreen defendants, would not be subject to liability for claims arising out of CMA's bills of lading.

11

Indeed, Fracht's counsel conceded as much at oral argument, acknowledging that the second clause represented "an agreement not to raise any claim against CMA's agents," including the Evergreen defendants. ECF No. 41 (Oral Argument Transcript), at 9:21. On this basis, the Court may also dismiss Fracht's third-party complaint as it applies to the Evergreen defendants, effectively mooting the corresponding Rule 14(c) tender. The Court therefore grants the Evergreen defendants' cross-motion for judgment on the pleadings.

\*\*\*

The Court has considered all remaining opposing arguments and concludes that they are without merit.[9] For the foregoing reasons, the Court grants both CMA's motion to dismiss and the Evergreen defendants' cross-motion for judgment on the pleadings. Accordingly, the case will proceed as between plaintiffs and Fracht only.

SO ORDERED.

New York, NY
5/2, 2025

JED S. RAKOFF, U.S.D.J.

---

[9] Fracht briefly suggests, by citation to Odette v. Shearson, Hamill & Co., 394 F. Supp. 946, 951 (S.D.N.Y. 1975), that the claims against the third-party defendants should proceed in this Court because "[t]here is a line of authorities holding that if venue is properly laid in the principal action, a third-party defendant impleaded under Rule 14(a) may not successfully raise the defense that venue would be improper in an original action by the third-party plaintiff against the third-party defendant." However, unsurprisingly, neither this District nor the Second Circuit has extended those authorities to objections based on forum selection clauses in Rule 14(c) cases. After all, "[t]he fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair." Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc., 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010).